## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**LESLIE KUHL,**

       **Plaintiff,**

                         **Case No. 2:18-cv-3337**

    **v.**                      **Magistrate Judge Norah McCann King**

**ANDREW SAUL,**
**Commissioner of Social Security,**

       **Defendant.**

### OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Leslie Kuhl for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

In October 2014, Plaintiff filed an application for benefits, alleging that she has been disabled since December 28, 2012, due to rheumatoid arthritis, chronic obstructive pulmonary disease ("COPD"), fibromyalgia, and colitis. R. 120−21, 133. Plaintiff's application was denied

---

[1] Andrew Saul, the current Commissioner of Social Security, is substituted as Defendant in his official capacity.

initially and upon reconsideration. R. 67−74. Plaintiff sought a *de novo* hearing before an

administrative law judge. R. 75−76. Administrative Law Judge Carl Stephan ("ALJ") held a

hearing on January 10, 2017, at which Plaintiff, who was represented by counsel, appeared and

testified. R. 27−48. In a decision dated March 21, 2017, the ALJ concluded that Plaintiff was not

disabled within the meaning of the Social Security Act at any time from December 28, 2012, the

alleged onset date, through December 31, 2014, the date on which Plaintiff was last insured for

benefits. R. 15−22. That decision became the final decision of the Commissioner of Social

Security when the Appeals Council declined review on January 8, 2018. R. 1−6. Plaintiff timely

filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On July 25, 2018, Plaintiff

consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C.

§ 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 8.[2] On March 11, 2020,

the case was reassigned to the undersigned. ECF No. 20. The matter is now ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a

large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));

*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is

4

supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See, e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

**B.     Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f).

6

If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2014. R. 17. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from December 28, 2012, her alleged disability onset date, through December 31, 2014, her date last insured. *Id.*

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: rheumatoid arthritis, asthma, and degenerative disc disease of the cervical spine. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 17–18.

At step four, the ALJ found that Plaintiff had the RFC to perform light exertion subject to certain additional limitations. R. 18–20. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as an office bookkeeper. R. 20. Alternatively, the ALJ found, at step five, that there are other jobs that exist in significant numbers in the national economy that Plaintiff could perform in light of her capacity to perform a full range of light work. R. 20–21.

The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from December 28, 2012, her alleged disability onset date, through December 31, 2014, her date last insured. R. 21.

Plaintiff disagrees with the ALJ's findings at steps three and four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 18. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 19.

## IV.   DISCUSSION

### A.   Step Three

Plaintiff first argues that the ALJ erred at step three of the sequential evaluation when he concluded that Plaintiff's impairments neither meet nor equal a listed impairment, including Listing 14.09. *Plaintiff's Moving Brief*, ECF No. 18, pp. 12–18. This Court disagrees.

At step three, an ALJ considers whether the combination of the claimant's medically determinable impairments meets or equals the severity of any of the impairments in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990)) (emphasis in original). Moreover, "[a] claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as

8

that of a listed impairment." *Zebley*, at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)).

At the time of the ALJ's decision, *i.e.*, March 21, 2017, Listing 14.09 addressed inflammatory arthritis as follows:

A. Persistent inflammation or persistent deformity of:

1. One or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively (as defined in 14.00C6); or

2. One or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively (as defined in 14.00C7).

or

B. Inflammation or deformity in one or more major peripheral joints with:

1. Involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity; and

2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

or

C. Ankylosing spondylitis or other spondyloarthropathies, with:

1. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 45° or more of flexion from the vertical position (zero degrees); or

2. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 30° or more of flexion (but less than 45°) measured from the vertical position (zero degrees), and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity.

9

or

D. Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

1. Limitation of activities of daily living.

2. Limitation in maintaining social functioning.

3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 14.09 (2017); *see also id*. at § 14.00D6.[3]

---

[3] Listing 14.09 also refers to Listing 14.00D6, which provides as follows:

6. Inflammatory arthritis (14.09).

a. General. The spectrum of inflammatory arthritis includes a vast array of disorders that differ in cause, course, and outcome. Clinically, inflammation of major peripheral joints may be the dominant manifestation causing difficulties with ambulation or fine and gross movements; there may be joint pain, swelling, and tenderness. The arthritis may affect other joints, or cause less limitation in ambulation or the performance of fine and gross movements. However, in combination with extra-articular features, including constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss), inflammatory arthritis may result in an extreme limitation.

b. Inflammatory arthritis involving the axial spine (spondyloarthropathy). In adults, inflammatory arthritis involving the axial spine may be associated with disorders such as:
(i) Reiter's syndrome;
(ii) Ankylosing spondylitis;
(iii) Psoriatic arthritis;
(iv) Whipple's disease;
(v) Behçet's disease; and
(vi) Inflammatory bowel disease.

c. Inflammatory arthritis involving the peripheral joints. In adults, inflammatory arthritis involving peripheral joints may be associated with disorders such as:
(i) Rheumatoid arthritis;
(ii) Sjögren's syndrome;
(iii) Psoriatic arthritis;
(iv) Crystal deposition disorders (gout and pseudogout);

(v) Lyme disease; and

(vi) Inflammatory bowel disease.

d. Documentation of inflammatory arthritis. Generally, but not always, the diagnosis of inflammatory arthritis is based on the clinical features and serologic findings described in the most recent edition of the Primer on the Rheumatic Diseases published by the Arthritis Foundation.

e. How we evaluate inflammatory arthritis under the listings.

(i) Listing-level severity in 14.09A and 14.09C1 is shown by an impairment that results in an "extreme" (very serious) limitation. In 14.09A, the criterion is satisfied with persistent inflammation or deformity in one major peripheral weight-bearing joint resulting in the inability to ambulate effectively (as defined in 14.00C6) or one major peripheral joint in each upper extremity resulting in the inability to perform fine and gross movements effectively (as defined in 14.00C7). In 14.09C1, if you have the required ankylosis (fixation) of your cervical or dorsolumbar spine, we will find that you have an extreme limitation in your ability to see in front of you, above you, and to the side. Therefore, inability to ambulate effectively is implicit in 14.09C1, even though you might not require bilateral upper limb assistance.

(ii) Listing-level severity is shown in 14.09B, 14.09C2, and 14.09D by inflammatory arthritis that involves various combinations of complications of one or more major peripheral joints or other joints, such as inflammation or deformity, extra-articular features, repeated manifestations, and constitutional symptoms or signs. Extra-articular impairments may also meet listings in other body systems.

(iii) Extra-articular features of inflammatory arthritis may involve any body system; for example: Musculoskeletal (heel enthesopathy), ophthalmologic (iridocyclitis, keratoconjunctivitis sicca, uveitis), pulmonary (pleuritis, pulmonary fibrosis or nodules, restrictive lung disease), cardiovascular (aortic valve insufficiency, arrhythmias, coronary arteritis, myocarditis, pericarditis, Raynaud's phenomenon, systemic vasculitis), renal (amyloidosis of the kidney), hematologic (chronic anemia, thrombocytopenia), neurologic (peripheral neuropathy, radiculopathy, spinal cord or cauda equina compression with sensory and motor loss), mental (cognitive dysfunction, poor memory), and immune system (Felty's syndrome (hypersplenism with compromised immune competence)).

(iv) If both inflammation and chronic deformities are present, we evaluate your impairment under the criteria of any appropriate listing.

11

Here, the ALJ determined at step two that Plaintiff's severe impairments consisted of rheumatoid arthritis, asthma, and degenerative disc disease of the cervical spine. R. 17. At step three, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments":

> As noted more fully below, the claimant's neck impairment did not meet or equal the criteria put forth in Listing 1.04. Specifically, the claimant has not presented sufficient evidence that she experienced nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, and motor loss, sensory and reflex loss.
>
> Moreover, the claimant does not meet or equal Listing 3.03. She has failed to present evidence that, in spite of prescribed treatment requiring physician intervention, she experienced, *inter alia*, asthma attacks at least once every 2 months or at least six times a year.

R. 17–18.

Plaintiff criticizes this finding and reasoning, arguing that the ALJ's statement is conclusory, that he failed to specifically consider Listing 14.09, and that he failed to compare Plaintiff's rheumatoid arthritis with any listing at step three. *Plaintiff's Moving Brief*, ECF No. 18, pp. 14–17. Although the ALJ failed to expressly refer to Listing 14.09, this failure is not fatal to his decision "as long as the ALJ's review of the record permits meaningful review of the step-three conclusions." *See Lopez v. Comm'r of Soc. Sec.*, 270 F. App'x 119, 121 (3d Cir. 2008) (citations omitted); *see also Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 262–63 (3d Cir. 2006) (rejecting argument that the ALJ was required to identify which listings he used in his decision, stating that "the ALJ is not required to use any specific format or language in his analysis, as long as he sufficiently develops the record to permit meaningful judicial review[,]" and finding that "the ALJ did state what listings he used for comparison" by citing to Listing 1.00, which "is not merely an introductory treatise"); *Jones*, 364 F.3d at 503–05 (finding that, even though the ALJ did not expressly refer to any specific Listing, the ALJ's analysis satisfied

step three because the decision indicated that the ALJ considered the appropriate factors). Here, although the ALJ did not explicitly refer to the criteria of Listing 14.09 at step three, "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the Claimant] did not meet the requirements for any listing, including" Listing 14.09.  *See Jones*, 364 F.3d at 505; *see also Lopez*, 270 F. App'x at 122 (finding that the "ALJ's failure to discuss specific Listings is not reversible error . . . because the ALJ analyzed all the probative evidence and explained his Decision sufficiently to permit meaningful review"); *Rivera*, 164 F. App'x at 262−63; *Saich o/b/o N.E.S. v. Comm'r of Soc. Sec.*, No. CV 16-3346, 2017 WL 3718109, at *5 (D.N.J. Aug. 29, 2017) (finding the ALJ's medical equivalence analysis sufficient to allow for meaningful review because, although "brief, elsewhere in the decision (and particularly in his functional-equivalence analysis)[,]" the ALJ discussed the relevant medical and educational records and testimony). For example, in addition to his analysis at step three, the ALJ provided, at step four, a comprehensive review of the medical and record evidence relevant to Listing 14.09. R. 18−20. The ALJ noted that Plaintiff "submitted little evidence that falls within the relevant period of adjudication to substantiate her allegation that she is disabled[,]" and specifically considered a February 2013 ultrasound study which revealed no evidence of deep venous thrombosis in the lower extremities despite Plaintiff's complaints of leg pain and swelling, R. 19; a March 2013 report reflecting a history of rheumatoid arthritis affecting the hands and wrists with associated symptoms of fatigue and rashes, but a largely unremarkable physical exam conducted that same month, *id*.; notes from a treating physician, Nicholas Scarpa, M.D., that reflect normal respiratory functioning despite a history of asthma, and numerous reports that generally show no evidence of neurological or motor deficits despite Plaintiff's frequent reports of diffuse body pain, *id*.; an August 2014 MRI of the cervical spine

13

that reflected only moderate spinal stenosis, *id.*; an October 2014 examination at which Plaintiff reported cervical pain and which revealed reduced range of motion of the cervical spine with associated tenderness, but also intact cranial nerve functioning, full muscle strength in the upper and lower extremities, and no evidence of sensory deficits, *id.*; a November 2014 examination that confirmed that Plaintiff was neurologically intact and had full muscle strength and, despite a reduced range of motion of the cervical spine, no evidence of clubbing, cyanosis, or edema, *id.*; and a December 2014 evaluation at which Plaintiff denied pain despite some swelling in the hands and tenderness in the hands and hips, *id.*

This thorough review by the ALJ of the evidence relevant to Listing 14.09 permits meaningful review by this Court. *See Jones*, 364 F.3d at 505; *cf. Klangwald v. Comm'r of Soc. Sec.*, 269 F. App'x 202, 204 (3d Cir. 2008) ("After broadly concluding that [the claimant] 'has no impairment, which meets the criteria of any of the listed impairments,' the ALJ followed this conclusion with a searching review of the medical evidence. Under our precedents, this is sufficient."). Notably, Plaintiff does not discuss, or even identify, the criteria for Listing 14.09, nor does she cite to any evidence in the record that satisfies such criteria. *See Plaintiff's Moving Brief*, ECF No. 18, pp. 12–18. Plaintiff therefore has not shown that the ALJ erred when finding that Plaintiff's impairments neither meet nor medically equal a listed impairment. *See Jones*, 364 F.3d at 505; *see also Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 162–63 (3d Cir. 2008) (finding that substantial evidence supported the ALJ's finding that the claimant's impairments did not meet a listed impairment where the claimant "provides us with no citations to any record evidence demonstrating that her impairments are of Listing-level severity").

Plaintiff also complains that her "fibromyalgia, uncontradicted in the record is never mentioned at all, nor is it mandated step 3 analysis detailed in SSR 12-2p." *Plaintiff's Moving*

*Brief*, ECF No. 18, pp. 17–18 [sic]. Plaintiff provides no citation to the record or explanation to support this assertion. *See id*. The Court therefore finds no merit in Plaintiff's undeveloped argument in this regard. *Cf. Atkins v. Comm'r Soc. Sec.*, No. 19-2031, 2020 WL 1970531, at *4 (3d Cir. Apr. 24, 2020) ("Lacking any direction from [the claimant] as to the specific [evidence] at issue, we will not scour the record to attempt to discern [the claimant's] position."); *Wright v. Comm'r Soc. Sec.*, 783 F. App'x 243, 245 (3d Cir. 2019) ("We need not address this conclusory, undeveloped accusation.") (citations omitted). Moreover, an ALJ is not expected "to make reference to every relevant treatment note in a case[,]" *Fargnoli*, 247 F.3d at 42, and the ALJ may overlook evidence that is "neither pertinent, relevant nor probative." *Johnson*, 529 F.3d at 204. Notably, "[a] diagnosis alone . . . does not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). Plaintiff's undeveloped argument therefore will not serve as a basis for remand. *Id*.; *see also Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Atkins*, 2020 WL 1970531, at *4; *Padgett*, 2018 WL 1399307, at *2.

For all these reasons, this Court concludes that substantial evidence supports the ALJ's findings at step three of the sequential evaluation.

B.      **RFC and Subjective Complaints**[4]

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence and that the ALJ improperly evaluated Plaintiff's subjective complaints of pain. *Plaintiff's Moving Brief*, ECF No. 18, pp. 18–29. This Court disagrees.

A claimant's RFC is the most that the claimant can do despite the claimant's limitations. 20 C.F.R. § 404.1545.(a)(1). At the administrative hearing stage, an ALJ is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, an ALJ has the duty to consider all the evidence. *Plummer*, 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to exclude from the RFC "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

---

[4]This section of *Plaintiff's Moving Brief*, ECF No. 18, p. 18, seems to include the contention that the ALJ improperly rejected probative evidence as untimely. However, Plaintiff fails in this section to identify what evidence the ALJ rejected as untimely and provides no argument as to why it was improper to reject such evidence. *See id*. at 18–29.  However, Plaintiff appears to flesh out this argument in a later section addressing medical expert testimony, *id*. at 29–33, which the Court will therefore address in the next section.

Here, the ALJ determined that Plaintiff had the RFC to perform light exertion subject to certain additional environmental limitations:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she must avoid concentrated exposure to odors, dusts, gases, fumes, and other respiratory irritants.

R. 18. In making this finding, the ALJ detailed years of record evidence, including, *inter alia*, a February 2013 ultrasound study that revealed no evidence of deep venous thrombosis in the lower extremities despite Plaintiff's complaints of leg pain and swelling; a March 2013 report reflecting a history of rheumatoid arthritis, but a largely unremarkable physical exam during that same month; progress notes that reflect normal respiratory functioning despite a history of asthma, and numerous reports that generally show no evidence of neurological or motor deficits; an August 2014 MRI of the cervical spine reflecting only moderate spinal stenosis; an October 2014 evaluation which revealed reduced range of motion of the cervical spine with associated tenderness, but also intact cranial nerve functioning, full muscle strength in the upper and lower extremities, and no evidence of sensory deficits; a November 2014 examination which confirmed that Plaintiff was neurologically intact with full muscle strength throughout the body and, despite a reduced range of motion of the cervical spine, no evidence of clubbing, cyanosis, or edema; a December 2014 evaluation at which Plaintiff denied pain, despite some evidence of swelling in the hands and tenderness in the hands and hips during a separate examination that month; and a January 2015 chest x-ray that showed no evidence of pulmonary disease despite Plaintiff's complaints of coughing and shortness of breath. R. 19. This record unquestionably contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

However, Plaintiff challenges this finding, complaining that "the RFC is announced

17

without connection to the evidence upon which it purports to rest[,]" and listing certain medical evidence. *Plaintiff's Moving Brief*, ECF No. 18, p. 21. Plaintiff goes on to argue that the RFC is defective because it fails to include limitations on standing, sitting, lifting and carrying, concentration, absences from work, additional breaks, and off-task allowances in pace and production. *Id*. at 23. Plaintiff's arguments are not well taken. As an initial matter, Plaintiff does not cite to any medical source that found specific functional limitations that the ALJ failed to include in the RFC, nor does she cite to any portion of the record that supports her argument that the ALJ erred by not including the specified limitations. *See id*. This Court will not hunt through the record to find evidence to support Plaintiff's argument. *See Atkins v. Comm'r Soc. Sec.*, No. 19-2031, 2020 WL 1970531, at *4 (3d Cir. Apr. 24, 2020) ("'[J]udges are not like pigs, hunting for truffles buried in the record.'") (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)) (internal citation omitted)); *see also United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently instructed parties that they bear the responsibility to comb the record and point the Court to the facts that support their arguments.").

To the extent that Plaintiff relies on her own subjective statements to undermine the ALJ's RFC determination and argues that the ALJ improperly evaluated those statements, *Plaintiff's Moving Brief*, ECF No. 18, pp. 23−29, that argument is not well taken. "Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider

whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id*.; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In this evaluation, an ALJ considers objective medical evidence as well as other evidence relevant to a claimant's symptoms. 20 C.F.R. §§404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms).

Finally, "[t]he ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A]

reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").[5]

Here, the ALJ followed this two-step evaluation process.  After considering the record evidence, including Plaintiff's hearing testimony, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 18. The ALJ went on to consider Plaintiff's testimony at the administrative hearing and, as set forth in more detail above, detailed years of medical evidence. R. 18–20. In doing so, the ALJ specifically noted, *inter alia*, that despite complaints of leg pain and swelling, a February 2013 ultrasound revealed no evidence of deep venous thrombosis in the lower extremities; a March 2013 physical evaluation was largely unremarkable despite Plaintiff's history of rheumatoid arthritis; Plaintiff's treating physician, Dr. Scarpa, noted in numerous reports from January 2013 to December 2014 that Plaintiff showed normal respiratory functioning despite her history of asthma and she generally showed no evidence of neurological or motor deficits despite some swelling at various sites in the body; an August 2014 MRI revealed only moderate spinal stenosis despite persistent complaints of neck pain; in October 2014, Plaintiff reported cervical pain, but the examination showed intact cranial nerve functioning, full muscle strength in the upper and lower extremities, and no evidence of sensory deficits despite reduced range of motion of the cervical spine with associated tenderness; in

---

[5]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility."  SSR 16-3p.  However, "while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same." *Levyash v. Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

November 2014, following steroid injections, Plaintiff was neurologically intact and showed full muscle strength throughout the body and, despite a reduced range of motion of the cervical spine, Plaintiff showed no evidence of clubbing, cyanosis, or edema; in December 2014, and despite some evidence of swelling in the hands and tenderness in the hands and hips, Plaintiff denied pain; and a January 2015 chest x-ray was unremarkable and showed no evidence of pulmonary disease despite Plaintiff's complaints of coughing and shortness of breath. R. 19. This record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the medical evidence. *Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

As previously discussed, an ALJ need include only "credibly established" limitations, *i.e.*, limitations "that are medically supported and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554; *see also Grella v. Colvin*, No. 3:12-CV-02115-GBC, 2014 WL 4437640, at *18 (M.D. Pa. Sept. 9, 2014) ("[T]he ALJ cannot accommodate limitations which do not exist, or which cannot be found in the medical record. No specific functional limitations were provided by any of Plaintiff's medical sources with respect to her carpal tunnel syndrome[.]") (internal citation and quotation marks omitted). Plaintiff does not identify specific functional limitations found by any medical source that the ALJ failed to include in the RFC. To the extent that Plaintiff relies on her own subjective statements to undermine the ALJ's RFC determination, the ALJ properly discounted these statements as inconsistent with the medical evidence. For all these reasons, this Court concludes that the RFC found by the ALJ enjoys substantial support in the record.

### C.      Medical Expert Testimony

Plaintiff next argues that the ALJ should have used medical expert testimony to determine the likely onset date of disability, contending that the ALJ improperly rejected as untimely two consultative examinations performed in July 2016. *Plaintiff's Moving Brief*, ECF No. 18, pp. 29–34 (citing, *inter alia*, SSR 83-20). Plaintiff's argument is not well taken.

SSR 83-20 requires an ALJ to "call on the service of a medical advisor when onset [date] must be inferred" where the Plaintiff has alleged a "slowly progressive impairment[.]" This is because "[w]ith slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling." SSR 83-20; *see also Welsh v. Comm'r Soc. Sec.*, 662 F. App'x 105, 108 (3d Cir. 2016) ("Social Security Ruling 83-20 provides that an ALJ should enlist a medical advisor when onset must be inferred or, in other words, when the medical evidence concerning the date on which the claimant became disabled is ambiguous."); *Walton v. Halter*, 243 F.3d 703, 709 (3d Cir. 2001) (reversing an ALJ's determined onset date where there existed "no legitimate basis for the conclusion of the ALJ on the onset issue" and where the ALJ chose to rely "on his lay analysis of the evidence" rather than to "call upon the services of a medical advisor," as required by SSR 83-20). Courts "have generally applied SSR 83-20, and have required the ALJ to call a medical expert, where medical evidence from the relevant period is unavailable." *Perez v. Comm'r of Soc. Sec.*, 521 F. App'x 51, 56–57 (3d Cir. 2013); *see also Yots v. Comm'r Soc. Sec.*, 704 F. App'x 95, 97 (3d Cir. 2017) (explaining that SSR 83-20 requires an ALJ to call a medical adviser where "the record contained no evidence to substantiate *or contradict* a claimant's subjective testimony as to pain and impairment") (emphasis in the original); *Klangwald v. Comm'r of Soc. Sec.*, 269 F. App'x 202, 205 (3d Cir. 2008) ("[W]e have generally applied SSR 83-20 only where medical evidence

from the relevant period is unavailable"); *Kirk v. Comm'r of Soc. Sec.*, 177 F. App'x 205, 208–09 (3d Cir. 2006) (distinguishing *Walton* where the plaintiff's claim of earlier onset created a time period of only three years and where medical evidence for the relevant period supported the ALJ's conclusion regarding onset date); *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 549 (3d Cir. 2003) ("[T]he ALJ must call upon the services of a medical advisor in a situation where the alleged impairment was a slowly progressing one, the alleged onset date was far in the past, and adequate medical records for the most relevant period were not available.") (citing *Walton*, 243 F.3d at 709). Where the ALJ "had access to adequate medical records from the time period before the expiration of [the claimant's] insured status," the ALJ is not required to obtain an expert medical opinion to determine the onset date. *Jakubowski v. Comm'r of Soc. Sec.*, 215 F. App'x 104, 107–08 (3d Cir. 2007) (distinguishing *Newell* and *Walton* and affirming denial of benefits); *see also Rodriguez v. Berryhill*, No. CV 17-6884-KM, 2019 WL 1013343, at *8 (D.N.J. Mar. 1, 2019) ("In the more usual case, however, a medical expert is not required. The Third Circuit has held that an ALJ can reasonably dete[rm]ine an onset date where the ALJ has access to adequate medical records relating to the time period before the expiration of the claimant's insured status.") (citing *Jakubowski*, 215 F. App'x at 108); *cf. Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 618 (3d Cir. 2009) ("*Walton*'s directive to seek out the services of a medical advisor is limited to situations where the underlying disease is progressive and difficult to diagnose, where the alleged onset date is far in the past, and where medical records are sparse or conflicting.").

Here, Plaintiff alleged disability since December 28, 2012, and she was last insured for disability insurance benefits on December 31, 2014. R. 15, 17. The ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act at any time during that period. R.

21. As set forth above and as detailed in the ALJ's decision, adequate record evidence was available and sufficient to enable the ALJ to determine that Plaintiff was not disabled at any time prior to her date last insured, *i.e.*, December 31, 2014. *See See Kushner v. Comm'r Soc. Sec.*, 765 F. App'x 825, 829–30 (3d Cir. 2019) ("Here, however, a wealth of medical records from the relevant period were available and included in the record. . . . Accordingly, our precedents did not compel the Commissioner to seek out a medical expert in this case."); *Jakubowski*, 215 F. App'x 107–08. Notably, SSR 83-20 applies only in cases where the ALJ makes a finding of disability, but the ALJ is unable to determine the onset date because of ambiguity or lack of access to inadequate medical records. *See* SSR 83-20. Because sufficient medical evidence supported the ALJ's finding that Plaintiff was not disabled at any point prior to her date last insured, SSR 83-20 did not compel the ALJ to obtain an expert medical opinion to determine the disability onset date. *Id*.

Plaintiff nevertheless insists that she was disabled at some point during the relevant period, complaining that the ALJ improperly discounted two consultative examiners who examined Plaintiff more than a year after the lapse of her insured status. *Plaintiff's Moving Brief*, ECF No. 18, pp. 32–34. In assigning little weight to these consultative examiners, the ALJ reasoned as follows:

> Finally, with regard to opinion evidence, in July 2016 the claimant underwent two physical consultative examinations under the care of Dr. Alexander Hoffman, M.D. and and [sic] Dr. Marc Weber, M.D., both of whom opined that the claimant is restricted to performing less than the full range of sedentary work (Exhibit 16F and l 7F). Although the undersigned has taken these reports into consideration, they post-date the claimant's date last insured by nearly 2 years and therefore are of limited probative value for the period under consideration. Accordingly, these opinions [are] given little weight[.]

R. 21.

24

"[M]edical evidence generated after the date last insured is only relevant to the extent it is reasonably proximate in time or relates back to the period at issue." *Alston v. Astrue*, No. 10-cv-839, 2011 WL 4737605, at *3 (W.D. Pa. Oct. 5, 2011); *see also Beety-Monticelli v. Comm'r of Soc. Sec.*, 343 F. App'x 743, 746 (3d Cir. 2009) (finding that the ALJ reasonably found that a doctor's opinion nearly five years after the date last insured "lacked probative value" because it "shed no light" on the claimant's condition during the relevant period); *Porter v. Comm'r of Soc. Sec.*, No. CV 18-03744, 2019 WL 2590994, at *4–5 (D.N.J. June 25, 2019) (finding that the ALJ did not err in assigning little weight to a physician's opinion on the basis that the opinion "'was rendered more than a year after [Plaintiff's] date last insured and [it] does not indicate that it relates back' to the disability evaluation period") (citations omitted). Here, the consultative examiners' reports were issued more than a year—approximately nineteen months—after Plaintiff's date last insured of December 31, 2014, and therefore were not reasonably proximate in time. *See Porter*, 2019 WL 2590994, at *4–5. Notably, Plaintiff does not explain how or why these reports relate back to the period at issue. *Plaintiff's Moving Brief*, ECF No. 18, pp. 32–34. Accordingly, the Court finds no error in the ALJ's decision to assign little weight to the consultative examiners' reports.

For all these reasons, the ALJ's failure to obtain medical expert testimony to determine the disability onset date simply will not serve as a basis for remanding this case.

### D.    Past Work

Finally, Plaintiff argues that the ALJ's determination that she could perform her past relevant work as an office bookkeeper was not supported by substantial evidence. *Plaintiff's Moving Brief*, ECF No. 18, pp. 34–36. This Court disagrees.

At step four, "[t]he claimant bears the burden of demonstrating an inability to return to her past relevant work." *Plummer*, 186 F.3d at 428. "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). The ALJ considers whether the claimant has the RFC to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). In making this assessment, the ALJ must do three things:

> (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Garibay v. Comm'r of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting *Burnett*, 220 F.3d at 120). SSR 82-62 identifies the evidence that the ALJ should consider in making this determination, particularly the claimant's statements about past work:

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

SSR 82-62; *see also Garibay*, 336 F. App'x at 158 (stating that when considering whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers, "the ALJ may rely on job descriptions found in the Dictionary of Occupational Titles ("DOT")").

When evaluating vocational evidence, an ALJ should determine whether "the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it" or whether "the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." SSR 82-61. In connection with this latter consideration, "if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job, but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" *Id.*

Here, the ALJ determined that Plaintiff was capable of performing her past relevant work as an office bookkeeper because that work did not require the performance of work-related activities precluded by Plaintiff's RFC:

> A review of the claimant's earning history indicates that she performed work as an office bookkeeper within the last 15 years, at the level of substantial gainful activity, on a full-time basis, and performed the job long enough to learn it in accordance with its specific vocational profile ("SVP") (see Exhibit 2E, pg. 3, 4E, pg. 1, 2D, pg. 2, and SD, pg. l).

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant was able to perform it as actually and generally performed. Pursuant to the <u>Dictionary of Occupational Titles</u>, this job is performed at the sedentary exertional level and does not involve concentrated exposure to respiratory irritants (see DOT No. 210.382-046). Moreover, the claimant indicated in her Work History Report that she worked at this position from 2005 to 2012 and that it involved no more than sedentary work, including lifting and carrying less than 10 pounds (Exhibit 4E, pg. 2). In short, because the claimant retained the capacity to perform light work, by extension, she was able to perform work as a bookkeeper as actually and generally performed. Furthermore, as noted above, the claimant's earnings history indicates that she performed this job at the level of substantial gainful activity (Exhibit 5D, pg. l).

R. 20.

Plaintiff challenges this finding, arguing, *inter alia*, that the ALJ failed to disclose that the past relevant work was skilled, "requiring a higher level of concentration[,]" and failed to set

forth a function by function comparison between past work and Plaintiff's abilities. *Plaintiff's Moving Brief*, ECF No. 18, p. 36. Plaintiff's arguments are not well taken. As previously discussed, the ALJ concluded that Plaintiff was capable of a full range of light work with certain environmental limitations. R. 17. Plaintiff has not identified any mental limitation arising from any impairment that prevented her from performing her past relevant work, nor has she explained how any alleged error in failing to identify the specific skill level of her past relevant work harmed her or would lead to a different result in this case. *See Plaintiff's Moving Brief*, ECF No. 18, p. 36; *see also Shinseki*, 556 U.S. at 409−10. Further, Plaintiff has not shown how an alleged failure to engage in a function by function comparison requires remand based on this record. *See Plaintiff's Moving Brief*, ECF No. 18, p. 36; *see also* R. 20, 32 (reflecting Plaintiff's hearing testimony that she worked in an office on and off for several years); *Chiaradio v. Comm'r of Soc. Sec.*, 425 F. App'x 158, 161 (3d Cir. 2011) (affirming the ALJ's RFC determination, despite the fact that "the ALJ did not make a task by task analysis," where the ALJ's RFC finding was supported by substantial evidence in the record, and the ALJ's "overall review carefully considered [the claimant's] past relevant work and the ALJ assessed what [the claimant] could reasonably do"); *Glass v. Comm'r of Soc. Sec.*, No. CV 18-15279, 2019 WL 5617508, at *8 (D.N.J. Oct. 31, 2019) ("[T]he United States Court of Appeals for the Third Circuit does not require an ALJ to perform a 'function-by-function' analysis at step four, so long as the ALJ's RFC determination is supported by substantial evidence in the record.") (collecting cases).

In any event, the ALJ went on to make the alternative finding, at step five of the sequential evaluation process, that there exist a significant number of other jobs in the national economy that Plaintiff could perform in light of her RFC and that Plaintiff was therefore not

disabled. R. 20–21. Plaintiff does not challenge this finding. *See generally Plaintiff's Moving Brief*, ECF No. 18. However, to the extent that any argument could be construed as doing so, such challenge would boil down to nothing more than an attack on the RFC found by the ALJ, which is supported by substantial evidence for the reasons previously discussed. For all these reasons, Plaintiff's challenges do not require remand based on this record.

## V.      CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date: November 6, 2020                           _____*s/Norah McCann King*_____
                                                                      NORAH McCANN KING
                                                         UNITED STATES MAGISTRATE JUDGE